SAMUEL E. CARTER *vs.* HARRY C. BROWNELL ET ALS.

Third Judicial District, New Haven, June Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

A spendthrift trust is one which provides a fund for the benefit of another, securing it against his improvidence and placing it beyond the reach of his creditors.

While this court has recognized the existence of the so-called American

Carter *v.* Brownell.

doctrine of spendthrift trusts, it has never adopted nor approved of it in its entirety.

The statute of 1899 (General Statutes, §§ 5872–5875) is the only authority now known to our law for the creation of spendthrift trusts; and therefore if an attempted creation of such a trust by will confers no discretion upon the trustee over the income, either to accumulate it, to withhold it, or to expend it for the beneficiary for any purpose, and the trust is not expressly given for the support of the beneficiary or his family, it does not comply with the statute and must fail of its purpose.

In the present case a wife provided in her will that a trust fund created by her father—upon the income of which she and her husband were mutually dependent for their support—and of which she had the right of disposal, should vest at her death·in a local trust company in trust to pay over the income, rents and profits, when collected, quarterly to her husband during his life, for his sole and separate use "and so that the same shall not be liable for the contracts, debts or engagements of my said husband." *Held:*—

1. That inasmuch as the will contained none of the statutory requirements to create a valid spendthrift trust, the income of the fund might be reached and appropriated by a creditor of the husband, in a proper equitable proceeding, to the payment of his debt. (*One judge dissenting.*)

2. That the expenses and counsel fees of the defendant trustee were chargeable to and payable out of the income, not the principal, of the trust fund.

Argued June 1st—decided July 20th, 1920.

ACTION by a judgment creditor to secure the appropriation to the payment of his claim of the income of a testamentary trust fund of which his debtor was the beneficiary, brought to and reserved by the Superior Court in Fairfield County (*Haines, J.*), upon an agreed statement of facts, for the advice of this court. *Judgment advised in favor of the plaintiff.*

Sarah S. Brownell resided for several years preceding her death at Westport with her husband, Harry C. Brownell, and they were mutually dependent for their support upon the income from a trust fund amounting to about $25,000 created under the will of her father, which gave her the power of disposal of this fund.

Mrs. Brownell made her will on the 19th day of

January, 1918, and, by virtue of said power under the will of her father, disposed of said trust fund in the third paragraph of her will as follows: "3. I give, devise and bequeath all my property of every kind and nature and wherever situate including the property now held in trust by the Philadelphia Trust Safe Deposit and Insurance Company of Philadelphia, to the Westport Bank and Trust Company of Westport, and its successors, in trust nevertheless, to invest the same and to collect and receive the income, rents, issues, profits and dividends thereof, and to pay over the same when collected in quarterly payments unto my husband HARRY C. BROWNELL, for the sole and separate use of my said husband for and during all the term of his natural life, and so that the same shall not be liable for the contracts, debts or engagements of my said husband, then upon the further trust to pay over the principal of said trust to such charity or charities, public use or uses, as my said husband may by will designate, or in the absence of such designation by my said husband, then to such charity or charities, public use or uses as shall be designated by said Trustee, the Westport Bank and Trust Company, or its successors, such designation to be made within one year after the death of my said husband."

At the time that Sarah S. Brownell made and executed her will, and at the time of her decease, she knew that her husband was indebted upon a judgment in favor of plaintiff herein in the sum of $24,717.85, and she made her will with that knowledge and in view of that fact. Mrs. Brownell had no children. Mr. Brownell during the last years of his life had no employment and was possessed of no property. Mrs. Brownell knew when she made her will that her husband, by reason of his years and manner of life, was incapable of supporting himself by any employment, and would be

Carter *v*. Brownell.

wholly dependent upon such income as she might provide for his support by will. Mr. Brownell has, since his wife's death, no property or income other than such interest as he may have in this trust fund, and has had and now has no employment or means of support. In order to support himself in any degree approaching that to which, while his wife lived, he was accustomed, the defendant would require an income of at least $1,500 per year. The gross income of this trust fund is about $1,500, the net income $1,350 per year, and $1,000 per year is reasonably necessary for the support of Mr. Brownell.

The questions reserved are stated in the footnote:—

"1. Whether this court may and should enjoin the defendant Brownell from assigning or attempting to assign or in any manner to sell, dispose of or encumber his life interest in the aforesaid trust fund held by the defendant The Westport Bank and Trust Company, under said will of Sarah S. Brownell, deceased, or the income, rents, issues, profits or dividends accrued or to accrue upon said trust fund, unless and until his said indebtedness to the plaintiff as set forth in said complaint and stipulation, and the judgment of this court to be rendered on said indebtedness is wholly discharged and paid, including lawful interest thereon.

"2. Whether this court may and should adjudge and decree that the defendant Brownell assign and set over to the plaintiff, his executors, administrators and assigns, all his right, title and interest in and to the income accrued and to accrue upon said trust fund until said judgment is wholly satisfied and discharged.

"3. Whether the judgment and decree of this court may and should issue requiring the defendant The Westport Bank and Trust Company as trustee under the will of said Sarah S. Brownell and its successors as said trustee, to account forthwith to the plaintiff for all income, rents, issues, profits and dividends accrued upon said trust fund, and in its possession, and to pay over to the plaintiff, his executors, administrators or assigns, on account of said indebtedness to him of the defendant Brownell, the net amount thereof and in like manner to account to the plaintiff and pay over the same to the plaintiff, his executors, administrators or assigns, on account of said indebtedness, periodically, as the said income, rents, issues, profits and dividends accrue in future during the life of said defendant Brownell, until the full amount of the judgment of this court to be rendered in favor of the plaintiff and against said Brownell upon the aforesaid indebtedness, including law-

*Arthur M. Marsh,* for the plaintiff.

*William H. Comley, Jr.,* for the defendants.

WHEELER, J.   The plaintiff prays a judgment against Harry C. Brownell, *cestui que trust* of the income of a trust fund created by the third clause of his wife's will, and for a decree against the Westport Bank and Trust Company, trustee of said fund, requiring it, as such income accrued, to pay over the net amount thereof, which would otherwise be payable to Harry C. Brownell, to the plaintiff or his order, until the said judgment be fully satisfied.

Mrs. Brownell, by the third clause of her will, devised and bequeathed her property to the Trust Company, in trust to invest the same and collect the income,

---

ful interest on such judgment, shall be satisfied and discharged, subject, however, to the reservation, annually, of sufficient of said income not exceeding $50 per year to provide for the care and maintenance of the aforesaid cemetery lot, as mentioned in the will of said Sarah S. Brownell.

"4. Whether this plaintiff, if not entitled to relief as above set forth, is entitled to equitable relief in some other form by which the net income accrued and accruing on said trust fund and directed to be paid to the defendant Brownell during his life, or the surplus thereof in excess of $1,000 per year, can and should be made available to the plaintiff as a judgment creditor of said Brownell and if so, in what manner and form such income during his life should be made thus available and payable to the plaintiff, his executors, administrators or assigns, until the aforesaid judgment to be rendered shall be fully paid and discharged, including lawful interest.

"5. Whether the expenses and counsel fees of the defendant trustee to be allowed by this court are chargeable to the income or to the principal of said trust fund, and if in part to each, then in what proportion.

"6. Whether the provisions of paragraph 8 of the will of said testatrix lay any duty or obligation upon the defendant trustee to consult the defendant Brownell regarding the investment or reinvestment of said trust fund or to follow his wishes or desires therein, and whether pending the discharge and satisfaction of said judgment to be rendered in favor of the plaintiff, the latter is to exercise and enjoy whatever rights belong to the defendant Brownell by virtue of said paragraph 8."

"and to pay over the same when collected in quarterly payments unto my husband Harry C. Brownell, for the sole and separate use of my said husband for and during all the term of his natural life, and so that the same shall not be liable for the contracts, debts or engagements of my said husband."

The defendant claims that this created a spendthrift trust in favor of Mr. Brownell, and that this limited equitable estate could not be alienated by him and is beyond the reach of the plaintiff creditor.

The spendthrift trust is one which provides a fund for the benefit of another, and which secures it against his own improvidence and places it beyond the reach of his creditors. In 1899 the General Assembly passed an Act covering these kinds of trusts. At this time there was a settled English doctrine and a settled American doctrine relating to trusts of this character. Under the English doctrine a life estate, like an estate in fee, carries with it to the *cestui que trust* the power of alienability and makes both liable for his debts. Under the American doctrine as recognized at this time by the United States Supreme Court and the courts of most of the States, the donor of the equitable life estate might, by appropriate language evincing an intent so to do, create an estate which would give to the *cestui que trust* the income for life and make the same inalienable by him and beyond the reach of his creditors. *Mason* v. *Rhode Island Hospital Trust Co.,* 78 Conn. 81, 85, 61 Atl. 57; 25 R. C. L. p. 352; *Nichols* v. *Eaton,* 91 U. S. 716.

We had in 1899 adopted the American doctrine in part. In *Easterly* v. *Keney,* 36 Conn. 18, we construed the testamentary trust then before the court as giving to the *cestui que trust* a vested life estate in the rents and profits of the land, the subject of the trust. The trust we held to be unlimited as to time and continuing dur-

ing the life of the *cestui que trust,* and giving to the trustee no discretionary power of appropriation, no power to withhold the income from the *cestui que trust* when the time arrived for payment. We therefore held that the income belonged to the *cestui que trust,* for all purposes,-like any other property, and was available for the payment of his debts, despite the testatrix's provision in the will that the rents and profits should in no case enure to the benefit of creditors. We pointed out the method by which the testatrix might have secured the income from creditors. "The testatrix should have conferred upon the trustee discretionary power of appropriation, if she desired to deprive the *cestui que trust* of ownership of the rents and profits before they should be paid to him." p. 22. In *Huntington* v. *Jones,* 72 Conn. 45, 50, 43 Atl. 564, we construed the testamentary trust as one requiring the trustees to apply the whole of the net income to the use of the *cestui que trust;* and we held that upon their refusal he could, by a proper proceeding in equity, compel them so to do, and as he could do this so his creditors could do it. The reason given for this holding was that the trustee was given no discretion over the income.

This was as far as we had reached in the development of our law of spendthrift trusts when the statute of 1899 was passed. Public Acts of 1899, Chap. 210; General Statutes, §§ 5872–5875. This legislation, we believe, was wholly new to us. It provided, that whenever by will, or other instrument, a trust was created to receive the rents, profits, or income of real or personal estate for the benefit of any person, such rents, profits, and income should be liable in equity to the claims of the creditors of such beneficiary when there was in the trust so created (1) no direction for accumulation of the income; (2) no discretion given to

the trustees to withhold such rents, profits and income from the beneficiary; and (3) no express provision that such trust is for the support of the beneficiary or his family.

This Act included our law as to spendthrift trusts so far as we had developed it, but it carried it far beyond. It covered a substantial part of the so-called American doctrine, but it did not enact it in whole, and it attached conditions to the validity of spendthrift trusts unknown to the American doctrine. It was, we think, an attempt to broaden our law and to attach certain definite conditions to all such trusts, whose presence should mark their validity, and whose absence should disclose their invalidity. It is not merely a statute of procedure, but one determining substantive rights. It applies to all trusts where property is given to trustees to pay over income. It is exclusive. Clearly it purposes to include all methods by which spendthrift trusts may be made effective. It is not narrow in its scope. Let the testamentary trust expressly provide that the income shall be for the support of the beneficiary or his family, and the testator's intent will prevail and the trust be protected from the claims of creditors of the beneficiary. The statute is notice to all of how to effectively frame such a trust.

Whether the statute intends that all income may be given by such a trust to the support of the beneficiary and his family, or whether the support intended is limited to what is reasonable in view of the station in life of the beneficiary, or is limited in some other way,— we are not now called upon to decide.

Under the trust provision before us the trustee is given no discretion over the income, no right to withhold it, no right to accumulate it, and no power to expend it for the beneficiary for any purpose, and the trust is not for the support of the beneficiary or his

family; hence it is not within the terms of the statute. General Statutes, §§ 5872, 5873.

The statute is the only authority now known to our law for the creation of spendthrift trusts. While this statute exists, our duty is satisfied in ascertaining whether a given trust is within or without it. We have no occasion to determine whether we will adopt the so-called American doctrine in its entirety or not, or to determine whether we will enlarge our law of spendthrift trusts as it stood prior to the Act of 1899.

Counsel for the defendant assume to find in some of our decisions, adopted since the passage of the Act of 1899, an acceptance of the American doctrine, and thereupon distinguish the statute as applicable to an unlimited right to, and estate in, the trust fund. That narrows the meaning of the statute against its explicit wording. We know of no decision of ours which has ever definitely adopted the so-called American doctrine. *Mason* v. *Rhode Island Hospital Trust Co.,* 78 Conn. 81, 61 Atl. 57, relied upon by the defendant, does not adopt this doctrine. What it decided was what *Easterly* v. *Keney,* 36 Conn. 18, and *Huntington* v. *Jones,* 72 Conn. 45, 43 Atl. 564, decided, that where trustees were given, as in the will before the court, discretionary power to give or withhold from a beneficiary income, he was incapable of alienating it and his creditors could not take it. The opinion recognizes the existence of the American doctrine: it does not adopt it nor approve of it. The same doctrine controlled in *Holmes* v. *Bushnell,* 80 Conn. 233, 67 Atl. 479, and in this case the court points out that the trust in question was created prior to the Act of 1899.

The hardship attendant upon the enforcement of this statute is not peculiar to this case. It frequently follows a failure to observe statutory provisions.

Questions on reservation two and three are answered

in the affirmative, and six in the negative. As to ques-. tion five, the expenses and counsel fees of the defendant trustee are to be chargeable to and paid from the income of the trust fund.

Other questions need not be answered in view of the conclusions reached.

The Superior Court is advised to render judgment in accordance with the foregoing opinion.

No costs in this court will be taxed in favor of either party.

In this opinion PRENTICE, C. J., BEACH and CASE, Js., concurred.

GAGER, J. (dissenting). Without taking space to argue the case, I dissent from the conclusion reached by the other members of the court, on the ground that the clear intent of the testatrix, derived from the words of the will, read in the light of the facts and circumstances relating to the conditions of the family of the testatrix (*Johnson* v. *Edmond,* 65 Conn. 492, 495, 33 Atl. 503), is to provide for the support of her husband so as to bring the case within the third exception of the statute of 1899 referred to in the prevailing opinion. The words used were not literally in the language of the statute, for the will was executed more than a year prior to the passage of the Act. Literal compliance with the very words of the exception is not required, if the words in fact used indicate the intent to effect the purpose allowed by the statute. I think the rational interpretation of the words used requires such a construction.